**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
LAWRENCE HOLUB,                           )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )    Civil Action No. 09-347  (RBW)
                                          )
EXECUTIVE OFFICE FOR                      )
UNITED STATES ATTORNEYS,                  )
UNITED STATES DEPARTMENT                  )
OF JUSTICE, and                           )
OFFICE OF INFORMATION                     )
AND PRIVACY, UNITED STATES                )
DEPARTMENT OF JUSTICE,                    )
                                          )
            Defendants.                   )
_____)

**MEMORANDUM OPINION**

Lawrence Holub, currently incarcerated at the Federal Correctional Institution in Glenville, West Viriginia and the pro se plaintiff in this civil suit, seeks declaratory and injunctive relief as well as compensatory and punitive damages against two components of the United States Department of Justice—the Executive Office for United States Attorneys and the Office of Information and Privacy—for allegedly "depriv[ing the p]laintiff of an impartial adjudication by withholding records, . . . and . . . fail[ing] to amend records[] concerning [the p]laintiff, . . . which [were], and are [being] us[ed, by the components] in making an adverse determination about [the p]laintiff," Complaint (the "Compl.") ¶ 4, in violation of his "civil rights, the Freedom of Information Act[,] 5 U.S.C. § 552 [(the "FOIA")], and the Privacy Act[,] 5 U.S.C. § 552a," Compl. ¶ 55.  Currently before the Court is the plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction.  After carefully considering the

parties' pleadings, the plaintiff's motion, and all memoranda and exhibits relevant thereto,[1] the Court concludes that it must deny the plaintiff's motion.

## I. Background

The plaintiff is a federal prisoner who is currently incarcerated at the Federal Correctional Institution in Glenville, West Virginia, id. ¶ 3, for committing drug trafficking offenses under 21 U.S.C. §§ 960(b)(3) and 841(b)(1)(C), id. ¶ 31. The plaintiff was convicted on July 20, 1994, by a jury in the United States District Court for the Central District of California. Id. ¶¶ 29, 31. The plaintiff was sentenced to two concurrent terms of imprisonment of 262 months. Id. ¶ 36. The plaintiff asserts that the sentence "was based, in pertinent part, upon the [court's] acceptance of the United States Probation Office's [(the "Probation Office")] adverse determination that [the p]laintiff's criminal history met the career offender provisions of § 4B1.1 of the [United States Sentencing Guidelines (the "Sentencing Guidelines")]."[2] Id. ¶ 37.

The plaintiff contends that the Probation Office and the sentencing court's adverse determination was erroneously based on two prior convictions of the plaintiff. Id. ¶¶ 37-39. In

---

[1] In addition to the plaintiff's Complaint and his Motion for a Temporary Restraining Order and a Preliminary Injunction ("Pl.'s TRO & PI Mot."), the Court considered the following documents in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss and for Summary Judgment (the "Defs.' Mem."); (2) the Defendants' Statement of Material Facts Not in Genuine Dispute (the "Defs.' Facts"); (3) the Plaintiff's Brief [and Memorandum of Points and Authorities] in Opposition to Defendants' Motion to Dismiss and for Summary Judgment (the "Pl.'s Opp'n"); (4) the Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss and for Summary Judgment (the "Defs.' Reply"); and (5) the Defendants' Opposition to Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction (the "Defs.' TRO & PI Opp'n").

[2] Section 4B1.1(a) of the Sentencing Guidelines states the following:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Further, under Section 4A1.2(e)(1) of the Sentencing Guidelines, the career offender enhancement can only be applied if the sentences for the two prior felony convictions were "imposed within fifteen years of the defendant's commencement of the instant offense . . . ."

this regard, the plaintiff represents that in September of 1974, he pled guilty to an armed robbery charge in the New Jersey Superior Court. Id. ¶ 8. Then, in June of 1975, the plaintiff, while serving the sentence he received for the 1974 conviction, was tried and convicted on another armed robbery charge also in the New Jersey Superior Court. Id. ¶ 10. The plaintiff alleges that he completed his sentence for the 1974 offense in August of 1978. See id. ¶ 18 (asserting that a New Jersey State Prison Classification Officer declared that the plaintiff "fully served" his 1974 sentence and terminated the sentence in August of 1978). Then, in November of 1979, the plaintiff was released on parole for the 1975 offense. Id. ¶ 19.

In his complaint, the plaintiff asserts that the Probation Office and sentencing court wrongfully relied upon the 1974 conviction as a predicate offense under Section 4B1.1 of the Sentencing Guidelines because the sentence for his 1974 conviction ended more than fifteen years before he was indicted on the 1994 offense. Id. ¶ 39. The plaintiff argues that the Probation Office and sentencing court, in reaching its conclusion, erroneously interpreted N.J. Stat. Ann. § 2C:44-5(e)(2) (West 2005) to mean that his sentence for his 1974 conviction ended in November of 1979, rather than in August of 1978.[3] Id. ¶ 28. He asserts that "had the . . . Probation Office[] and [sentencing court] not made that adverse determination[,] . . . [his] sentence would have been lessened to [arguably] . . . [thirty-seven] months of imprisonment." Id. ¶ 39. The plaintiff thus invokes the FOIA and Privacy Act to "obtain and have amended the false, inaccurate, and incomplete records with regard to the . . . 1974 armed robbery conviction and sentence [that] the [d]efendants[] . . . are intentionally using in making their adverse determination that such conviction and sentence was a predicate offense for the career offender enhancement . . . ." Pl.'s Opp'n at 4.

---

[3] N.J. Stat. Ann. § 2C:44-5(e)(2) states that "[w]hen terms of imprisonment run consecutively, the terms are added to arrive at an aggregate term to be served equal to the sum of all terms."

The defendants have now filed a motion to dismiss or, in the alternative, for summary judgment. They argue that "the office most likely to have responsive records," Defs.' Mem. at 6, has "conducted an adequate search for records responsive to [the p]laintiff's request but located no such records," id. at 2. The defendants further argue that the plaintiff has failed to demonstrate that the records he now seeks even exist, but that in any event these documents are not subject to the accuracy and damages provisions of the Privacy Act. Id. at 9.

In response, the plaintiff filed the instant motion for a temporary restraining order and preliminary injunction on September 14, 2009. Pl.'s TRO & PI Mot. at 1. The plaintiff also filed an opposition to the defendants' motion to dismiss on September 18, 2009. Pl.'s Opp'n at 1. The plaintiff seeks to "prevent[] the use of the inaccurate and incomplete records" that he alleges are maintained by the plaintiff so that he "may then seek to obtain relief from the erroneous adverse determination." Pl.'s TRO & PI Mot. at 3. The defendants respond that injunctive relief is not appropriate because the "[d]efendants are not 'using' the records requested by [the p]laintiff for any purpose whatsoever," and that the defendants have conducted a thorough, but ultimately fruitless, search for the requested documents. Defs.' TRO & PI Opp'n at 3.

## II. Standard of Review

Temporary restraining orders and preliminary injunctions are "extraordinary remed[ies] that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) (internal quotation and citation omitted). In deciding if injunctive relief should be granted, the Court "must examine . . . : (1) [whether] there is a substantial likelihood [the] plaintiff will succeed on the merits; (2) [whether the] plaintiff will be irreparably injured if an

injunction is not granted; (3) [whether] an injunction will substantially injure the other party; and (4) [whether] the public interest will be furthered by the injunction." Ellipso, Inc. v. Mann, 480 F.3d 1153, 1157 (D.C. Cir. 2007) (internal quotation and citation omitted). The Court "must balance these factors, and if the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." Id. (internal quotation and citation omitted). "Despite this flexibility, though, a movant must demonstrate at least some injury for a preliminary injunction to issue, . . . for 'the basis of injunctive relief in the federal courts has always been irreparable harm.'" Chaplaincy of Full Gospel Churches, 454 F.3d at 297 (quoting Sampson v. Murray, 415 U.S. 61, 88 (1974) (quotation omitted)) (further internal quotation omitted).

"A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." Id. (citation omitted). Nevertheless, even if a district court concludes that a party seeking preliminary injunctive relief cannot demonstrate irreparable injury, the District of Columbia Circuit has instructed that it should address all of the factors set forth above because "[i]t is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction that there should be fair compliance with [Federal Rule of Civil Procedure 52]." Id. at 304-05. This rule requires a court considering an application for preliminary injunctive relief to "set forth the findings of fact and conclusions of law which constitute the grounds of its action." Id. at 304.

### III. Legal Analysis

Pursuant to Rule 52(a), this Court must assess the merit of the plaintiff's request for injunctive relief as to each of the factors delineated above. As set forth more fully below, the

Court concludes that a balancing of these factors weighs against the entry of an injunction against the defendants. The plaintiff's motion must therefore be denied.

A.     Likelihood of Success on the Merits

"It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits," Hubbard v. United States, 496 F. Supp. 2d 194, 198 (D.D.C. 2007) (citation omitted), because "absent a substantial indication of likely success on the merits, there would be no justification for the [C]ourt's intrusion into the ordinary processes of administration and judicial review," id. (internal quotation and citation omitted). The plaintiff asserts three separate claims in his Complaint: (1) that the defendants have failed to conduct an adequate search for documents as required under the FOIA and Privacy Act, Pl.'s Opp'n at 8; Cf. Compl. ¶ 55; (2) that the defendants have failed to maintain accurate records about the plaintiff as required under the Privacy Act, Compl. ¶ 56; and (3) that the defendants have failed to amend or correct purported inaccuracies contained in these records in violation of the Privacy Act, id. ¶ 57.[4] The Court agrees with the defendants that the plaintiff is highly unlikely to succeed on the merits of any of his claims for the following reasons.

1.     The Plaintiff's Inadequate Search Claim

In resolving the plaintiff's first claim, the Court must decide whether the defendants' search for records responsive to the plaintiff's FOIA request was adequate. An agency that is responding to a FOIA request must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information

---

[4] For each of these three claims, the plaintiff also asserts that the defendants have violated his "civil rights" in addition to the FOIA or Privacy Act. It is unclear what civil rights provisions—constitutional, statutory, or otherwise—the plaintiff believes were violated by the defendants' alleged failure to maintain, produce, and amend the documents that are at issue in this matter. The Court, therefore, has no choice but to assume that the plaintiff's reference to "civil rights" is nothing more than a general description of his right to access and have corrected publicly-available documents under either the FOIA or the Privacy Act; thus, the Court's analysis of the plaintiff's FOIA and Privacy Act claims will also apply to the plaintiff's "civil rights" allegations.

requested." Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006) (internal quotation and citation omitted); see also Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (stating that "[an] agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents" (internal quotation and citation omitted)). While "an agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested," Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 28 (D.C. Cir. 1998) (internal quotation and citation omitted), the search "need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the [plaintiff's] specific request," Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986); see also id. at 953 (stating that "[i]t would be unreasonable to expect even the most exhaustive search to uncover every responsive file" (emphasis in original)).

Thus, "[t]here is no requirement that an agency search every record system" in which responsive documents might conceivably be found. Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Rather, the agency must demonstrate the adequacy of its search by providing a "reasonably detailed affidavit, setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Id. If the agency's affidavit suffices to establish the adequacy of its efforts, then "the burden is on [the plaintiff] to rebut [the defendant's] evidence by a showing that the search was not conducted in good faith. This can be done either by contradicting the defendant's account of the search procedure or by raising evidence of the defendant's bad faith." Moore v. Aspin, 916 F. Supp. 32, 35-36 (D.D.C. 1996) (citing Miller v. U.S. Dep't of State, 779 F.2d 1378, 1383-84 (8th Cir. 1985)). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other

7

documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation and citation omitted).

Here, the defendants have submitted a declaration from John F. Boseker, an Attorney Advisor in the Executive Office for United States Attorneys (the "EOUSA") at the United States Department of Justice. See Defs.' Mem., Declaration of John F. Boseker (the "Boseker Decl.") ¶ 1. Boseker explains that the EOUSA forwarded the plaintiff's request to the United States Attorney's Office for the Central District of California (the "USAO/CDCA") because that office was the one "most likely to have records responsive to [the p]laintiff's [FOIA and Privacy Act] request[s] because each United States Attorney's Office maintains the case files for criminal matters prosecuted by that office."[5] Id. ¶ 13. The EOUSA also notified the plaintiff of what had occurred and explained that the search could take anywhere from twenty days to nine months to complete, and that the EOUSA could assess fees for conducting its search. Id. at Ex. F. Presumably to avoid costs, the plaintiff agreed to limit the EOUSA's search to two hours, and to limit the processing of records to 100 pages. Id. ¶ 12.

After agreeing to the parameters of the search, the FOIA contact at the USAO/CDCA's office conducted a systematic search for records. Id. ¶ 17. Specifically, the contact conducted a search of "[t]he computer case tracking systems, LIONS and PACER." Id. These databases "have fields for retrieval of information based on a defendant's name, USAO file jacket number, and district court case number." Id. The contact also "searched card file indexes and the Federal Record center lists." Id. "By letter dated July 1, 2009, [the] EOUSA notified [the plaintiff] that no records had been located in the USAO/CDCA." Id. ¶ 16. After the initiation of this lawsuit,

---

[5] The EOUSA originally rejected the plaintiff's request to conduct a search on the grounds that the request was one for state records, which fall outside the reach of the FOIA and Privacy Act. Id. ¶ 7. The plaintiff appealed this determination, id. ¶ 8, and the Department of Justice Office of Information and Privacy remanded the appeal back to the EOUSA, id. ¶ 10, which then referred the request to the USAO/CDCA, id.

Boseker contacted Assistant United States Attorney Judith Heinz, id. ¶ 15, who "has been the AUSA assigned to all of [the plaintiff's] post-conviction collateral challenges to his convictions . . . ," id. ¶18.[6] She searched several case files maintained by her office related to the plaintiff's case, including his sentencing and post-conviction proceedings, and "saw no docket entry that gave her reason to believe that the requested state court sentencing-related records would be in these files." Id. ¶ 18.

Based on the foregoing, the Court finds that the defendants have provided a "reasonably detailed affidavit," Oglesby, 920 F.2d at 68, that establishes the reasonableness of the defendants' efforts to locate responsive documents. They conducted a thorough search of both electronic and non-electronic files located in the USAO/CDCA, the component most likely to possess the documents requested by the plaintiff. Further, the defendants' extensive efforts were especially reasonable and adequate given the plaintiff's agreement to limit the search to only two hours. The defendants' affidavit is, therefore, accorded a presumption of good faith unless the plaintiff can "contradict[] the defendant's account of the search procedure or by raising evidence of the defendant's bad faith." Moore, 916 F. Supp. at 35-36. The plaintiff has failed to rebut this presumption.

While the plaintiff himself has filed a reasonably detailed affidavit explaining the steps he has taken to obtain relevant records from the government, his own exhaustive efforts are immaterial as to whether the agency has complied with its duty to conduct a reasonable search. Indeed, the Court is hard-pressed to find any factual challenge, whether in his forty-seven paragraph declaration or his other submissions to the Court, to the adequacy of the defendants' search efforts. Rather, the plaintiff merely asserts that the search is inadequate because it did not

---

[6] AUSA Heinz had also been contacted by the contact person in the USAO/CDCA when the initial search was conducted. Id. ¶ 17.

disclose documents that he believes the defendants are using.  However, such "speculative claims about the existence . . . of . . . documents" are insufficient to rebut the good-faith presumption accorded to agency affidavits.  SafeCard Servs., Inc., 926 F.2d at 1200.  Having failed to proffer any evidence showing the inadequacy of the search procedure or the bad-faith of the defendants, the plaintiff's likelihood of success on the merits of his inadequate search claim is virtually nonexistent and clearly not substantial.

2.  The Plaintiff's Failure to Maintain and Amend Records Claims

Likewise, the plaintiff's remaining claims have no chance of succeeding on the merits.  The plaintiff argues that the defendants have violated the Privacy Act by failing "to <u>maintain records</u> concerning [the p]laintiff, which they are using in making an adverse determination against the [p]laintiff . . . ."  Compl. ¶ 56 (emphasis added).  The plaintiff relies on 5 U.S.C. § 552a(e)(5) as support for this position, which states in part that "[e]ach agency that maintains a system of records shall . . . maintain all records which are used by the agency in making any determination about any individual . . . ."  The plaintiff seemingly fails to recognize, however, that the Privacy Act also allows the head of an agency to promulgate rules to exempt any system of records from Section 552a(e)(5), so long as the system of records is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including . . . the activities of prosecutors . . . ."  5 U.S.C. § 552a(j)(2).  The Department of Justice has issued such a rule through the promulgation of 28 C.F.R. § 16.81, which states that "criminal case files" are exempt from 5 U.S.C. § 552a(e)(5).  Assuming that the records being sought by the plaintiff were used by the Department of Justice in his 1994 prosecution, these documents would likely be housed, if they even exist, in his

criminal case file. And, because that file is exempt from the accuracy and maintenance provisions of 5 U.S.C. § 552a(e)(5), the plaintiff cannot prevail on this claim.

As for the plaintiff's invocation of the Privacy Act to compel the defendants to amend his state records, this claim can be easily dismissed. The Privacy Act only applies to federal agency records; it "does not apply to state agencies." United States v. Streich, 560 F.3d 926, 935 (9th Cir. 2009); see also Martinson v. Violent Drug Traffickers Project, Civil Action No. 95-2161 (CRR), 1996 WL 411590, at *2 (D.D.C. July 11, 1996) ("Both the FOIA and the Privacy Act are inapplicable to state agencies."). Accordingly, because the plaintiff desires to have his state records amended, he must seek that relief from the appropriate state agency. The plaintiff's third and final claim must, therefore, be rejected.

In sum, the plaintiff has failed to establish any likelihood of success on the merits for any of his claims. The defendants have established that the agency has conducted an adequate and reasonable search for documents responsive to the plaintiff's FOIA request. Furthermore, the plaintiff has not made out a colorable claim under the Privacy Act which entitles him to the requested relief, and because the plaintiff has no likelihood of success on the merits, the scales tip heavily in favor of denying the motion for immediate injunctive relief. See Hubbard, 496 F. Supp. 2d at 198 (observing that "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review" absent a substantial indication of likely success on the merits (internal quotation and citation omitted)).

B.     Irreparable Injury

The second prong of the Court's required four-prong analysis asks whether the plaintiff can demonstrate that he will endure irreparable injury should his request for injunctive relief be denied. To satisfy this prong, the plaintiff's injury "must be both certain and great; it must be

actual and not theoretical." Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). The alleged injury must be "of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." Id. (internal quotation and citations omitted) (emphasis in original). Finally, "the injury must be beyond remediation" to warrant injunctive relief. Chaplaincy of Full Gospel Churches, 454 F.3d at 297.

The evidence adduced by the plaintiff in support of his motion does not meet this "high standard for irreparable injury." Id. While the plaintiff alleges many times over that the defendants are "using" purportedly erroneous records to his detriment, see, e.g., Compl. ¶ 55, the plaintiff fails to describe how or when these documents are going to be used in the imminent future, let alone whether these documents are going to be used in a way that presents the threat of "certain and great" injury to the plaintiff. Wisc. Gas Co., 758 F.2d at 674. The only purported harmful use alleged by the plaintiff is the one that took place almost fourteen years ago—when the defendants, Probation Office, and sentencing court allegedly relied upon these documents during the plaintiff's 1994 prosecution. Even assuming that the plaintiff is correct that the sentencing court imposed an erroneous sentence fourteen years ago, such grievances are not resolved through the injunction process. Rather, the plaintiff must resort to the same remedies available to all others similarly situated—the federal criminal appeal or post-conviction processes. The plaintiff has submitted no evidence whatsoever showing that he will suffer imminent harm if his motion for injunctive relief is not granted.

Based on the foregoing, this factor weighs heavily in favor of denying the motion for a preliminary injunction.

C.      Harm to the Defendants and Other Parties

The third factor for the Court to consider in weighing the merits of the plaintiff's renewed motion for injunctive relief is the extent to which an injunction would "substantially injure" the defendant and other parties. CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995). This factor weighs in favor of the plaintiff, albeit in an ironic fashion. After all, there is no evidence that the defendants are currently using or planning to use the documents being sought after by the plaintiff. Thus, an order by the Court enjoining the defendants from using these documents would, in essence, have no practical consequences for the defendants or anyone else for that matter. Therefore, because neither the defendants nor anyone else would be harmed by entering an injunction, the Court finds that this factor weighs in favor of the plaintiff.

D.      The Public Interest

Finally, the public interest would not be served if the plaintiff's request for injunctive relief were granted for several reasons. First, "it is in the public interest to deny injunctive relief when the relief is not likely deserved under law." Hubbard, 496 F. Supp. 2d at 203 (quoting Qualls v. Rumsfeld, 357 F. Supp. 2d 274, 287 (D.D.C. 2005)); see also Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1326 (D.C. Cir. 1998) ("The final preliminary injunction factor, the public interest, . . . is inextricably linked with the merits of the case."). As the Court has explained in some detail above, the plaintiff will almost certainly not succeed on the merits of his case. See supra Part III.A.

Second, "[t]he usual role of a preliminary injunction is to preserve the status quo pending the outcome of litigation." Cobell v. Kempthorne, 455 F.3d 301, 314 (D.C. Cir. 2006) (quotation omitted). Here, the plaintiff has not asserted that the status quo is at all threatened, for again, there is no allegation of any imminent action by the defendants with regards to the purported

13

erroneous documents that the plaintiff seeks to have produced and amended. Thus, this factor also weighs in favor of denying the plaintiff's motion for a preliminary injunction.

E.    Balancing of the Factors

In analyzing the four factors discussed above, it is evident to the Court that the plaintiff has not demonstrated why he is entitled to immediate injunctive relief. The two most considerable factors in the preliminary injunction analysis—the plaintiff's likelihood of success on the merits and the threat of irreparable harm to the plaintiff—weigh heavily in favor of the defendants. Furthermore, the Court would not be serving the public interest by issuing a preliminary injunction. Thus, balancing these factors leads the Court to the conclusion that the plaintiff's motion for injunctive relief must be denied.

### IV. Conclusion

"It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, at 129-30 (2d ed. 1995)) (emphasis supplied and footnotes omitted by the Supreme Court in Mazurek). The plaintiff in this case has not carried his heavy burden of proving that he is entitled to this extraordinary and drastic remedy, and his motion for injunctive relief must therefore be denied.

**SO ORDERED** this 12th day of October, 2009.[7]

REGGIE B. WALTON<br>
United States District Judge

---

[7] The Court issued an Order on October 5, 2009 consistent with this Memorandum Opinion.